```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
DONALD J. GUNN,                  :
                                 :
         Plaintiff,              :
                                 :
              v.                 :   Civil No. 3:17-cv-00757-AWT
                                 :
PENSKE AUTOMOTIVE GROUP, INC.,   :
                                 :
         Defendant.              :
-------------------------------- x
```

## RULING ON MOTION TO STRIKE JURY DEMAND

Defendant Penske Automotive Group, Inc. ("PAG") has moved pursuant to Federal Rule of Civil Procedure 39(a)(2) to strike the demand for a jury trial by plaintiff Donald J. Gunn ("Gunn"). The remaining claim in this case is one for discharge in violation of Conn. Gen. Stat. § 31-51q. For the reasons set forth below, PAG's motion to strike the jury demand is being denied.

Under Federal Rule of Civil Procedure 39(a), where a proper jury demand has been made, "trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

The Seventh Amendment provides that "[i]n [s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." "The right to a jury trial includes more than the common-law forms of action

recognized in 1791; the phrase '[s]uits at common law' refers to 'suits in which <u>legal</u> rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'" <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 564 (1990) (<u>quoting</u> <u>Parsons v. Bedford, Breedlove & Robeson</u>, 28 U.S. 433, 447 (1830)).

> To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought. 'First, we compare the statutory action to [eighteenth]-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second inquiry is the more important in our analysis.

<u>Id.</u> at 565 (<u>quoting</u> <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 42 (1989)).

Section 31-51q provides:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

As the first step of the Seventh Amendment analysis, the court must "'compare the statutory action to [eighteenth]-century actions brought in the courts of England prior to the merger of the courts of law and equity.'" Granfinanciera, S.A., 492 U.S. at 42 (quoting Tull v. United States, 481 U.S. 412, 417 (1987)).

> Although 'the thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791,' the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late [eighteenth-]century, as opposed to those customarily heard by courts of equity or admiralty.

Id. at 41 (quoting Curtis v. Loether, 415 U.S. 189, 193 (1974)).

In Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40, 51 (1990), the Connecticut Supreme Court addressed the question of whether an action for violation of Conn. Gen. Stat. § 31-290a "has [its] roots in the common law." The court concluded that it does. It stated:

> A violation of § 31-290a, a statute obviously designed to protect claimants who file for benefits under one of this century's most ameliorative statutory programs, is in essence a statutorily created tort deriving from the action for wrongful discharge set forth in Sheets [v. Teddy's Frosted Foods, Inc., 179 Conn. 471 (1980)]. It should be recalled that our modern law of torts has its origins in the common law actions of trespass and trespass on the case. We conclude, therefore, that because the classical theory upon which recovery is based in actions brought pursuant to § 31-290a was redressable at common law, the plaintiff's action was properly tried to a jury.

Id. at 52-53.

In Burrell v. Yale University, No. CV000159421S, 2003 WL 1477067 (Conn. Super. Ct. Mar 5, 2003), the court relied on the reasoning in Ford in concluding that there was a right to a jury trial under Conn. Gen. Stat. § 31-51q. The court noted that in Ford, the Connecticut Supreme Court "observed that § 31-290a is essentially a codification of the tort of wrongful discharge, which had its origins in the common law and was therefore triable to the jury." Id. at *1. The court recognized that the test was "whether the statutory action is 'substantially similar to cases for which the right to a jury trial existed at common law[.]'" Id. at *2 (quoting Assoc. Inv. Co. Ltd. P'ship v. Williams Assoc. IV, 230 Conn. 148, 154 (1994), which involved the test under the Connecticut Constitution). The court concluded that "[u]nder that test . . . § 31-51q qualifies for a jury trial." Id. Also, in Robinson v. Southern New England Telephone Company, No. 59448, 1994 WL 400942, *1 (Conn. Super. Ct. July 25. 1994), the court observed: "Arguably, then, the theory upon which recovery is based in actions brought under Sec. 31-51q has its ancestral roots in the common law action of trespass on the case." (citing Ford, 216 Conn. at 52-53).

This court similarly concludes that an action under § 31-51q has its origins in the common law. In Ford, the Connecticut Supreme Court found that the tort of wrongful discharge has its origins in the common law and that Conn. Gen. Stat. § 31-290a is, in essence,

-4-

a statutorily created tort deriving from the action for wrongful discharge set forth in Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471 (1980). This court is persuaded that Conn. Gen. Stat. § 31-51q is, in essence, no less a statutorily created tort derived from the action for wrongful discharge set forth in Sheets.

At the second step of the Seventh Amendment analysis, the court must "'examine the remedy sought and determine whether it is legal or equitable in nature.'" Granfinanciera, S.A., 492 U.S. at 42 (quoting Tull, 481 U.S. at 417-18). Citing to Broadnax v. City of New Haven, 415 F.3d 265 (2d Cir. 2005), a case involving a Title VII claim for lost wages, the defendant asserts that "the nature of the relief sought by Plaintiff – lost pay – is equitable in nature and therefore he is not entitled to a jury trial." Mot. to Strike Jury Demand at 3, ECF No. 144-1. The court disagrees.

In Chauffeurs, Teamsters and Helpers, Local No. 391, 494 U.S. at 570-72, the Court stated:

> In this case, the only remedy sought is a request for compensatory damages representing backpay and benefits. Generally, an action for money damages was the traditional form of relief offered in the courts of law. This Court has not, however, held that any award of monetary relief must necessarily be 'legal' relief. Nonetheless, because we conclude that the remedy respondents seek has none of the attributes that must be present before we will find an exception to the general rule and characterize damages as equitable, we find that the remedy sought by respondents is legal.
>
> First, we have characterized damages as equitable where they are restitutionary, such as in actions for disgorgement of improper profits[.] The backpay sought

-5-

> by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from McLean had the Union processed the employees' grievances properly. Such relief is not restitutionary.
>
> Second, a monetary award incidental to or intertwined with injunctive relief may be equitable. . . . Because respondents seek only money damages, this characteristic is clearly absent from the case.
>
> The Union argues that the backpay relief sought here must nonetheless be considered equitable because this Court has labeled backpay awarded under Title VII, of the Civil Rights Act of 1964, as equitable. . . .
>
> The court has never held that a plaintiff seeking backpay under Title VII has a right to a jury trial. Assuming, without deciding, that such a Title VII plaintiff has no right to a jury trial, the Union's argument does not persuade us that respondents are not entitled to a jury trial here. Congress specifically characterized backpay under Title VII as a form of equitable relief. . . . Furthermore, the Court has noted that backpay sought from an employer under Title VII would generally be restitutionary in nature . . . in contrast to the damages sought here from the Union.

Id. (quotation marks and citations omitted). The forgoing analysis makes it clear that PAG's reliance on Broadnax is misplaced.

Also, the court agrees with the plaintiff that "[a] review of the text of § 31-51q itself demonstrates that the relief provided is legal. . . . See Chauffeurs, Teamsters and Helpers, Local No. 391[, 494 U.S. at 570-71] (wages and benefits plaintiff would have received had the defendant processed grievances properly were legal remedies, not 'restitutionary' equitable remedies)." Opp'n to Mot. to Strike Jury Demand ("Opp'n) at 1-2, ECF No. 152. The remedy the plaintiff seeks under § 31-51q has neither of the

attributes (described in Chauffeurs, Teamsters and Helpers, Local No. 391) that must be present before the Supreme Court will find an exception to the general rule and characterize damages as equitable. Nor is this a Title VII case.

Accordingly, the court concludes that the remedy sought under § 31-51q is legal in nature.

The court notes that in Ford, 216 Conn. at 51, it was "undisputed that a § 31-290a action involves a legal remedy," and the remedies provided for under § 31-51q are substantially similar to those provided for under § 31-290a. See § 31-290a(b)(1) ("Any employee who is so discharged or discriminated against may . . . [b]ring a civil action . . . for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled. . . . The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs"). The fact that it was undisputed in Ford that a § 31-290a involves a legal remedy is consistent with this court's conclusion that the remedy under § 31-51q is legal in nature.

The court also agrees with the plaintiff that "[t]he Connecticut Supreme Court in Skinner v. Angliker, 211 Conn. 370 (1980), suggests without so holding that the remedy afforded under § 31-51q is legal rather than equitable[.]" Opp'n at 2. In Skinner, the issue was whether a plaintiff had a right to a jury trial in

an action brought against the state pursuant to § 31-51q. The court concluded that a plaintiff does not have a right to a jury trial in such an action. However, the key fact in the court's analysis was that "[b]ecause the state was immune from suit in 1818[1] for this type of action, the plaintiff now has no right to a jury trial brought against the state under § 31-51q." Id. at 378. The court then noted:

> Our analysis draws support from cases involving claims for a jury trial under the seventh amendment to the federal constitution in suits brought against the United States. Applying a historical test similar to the one set forth above, the United States Supreme Court has held that the seventh amendment does not apply to suits against the government, because these are not suits at common law within its true meaning.

Id. at 378-79 (internal quotations and citations omitted). Then the court observed:

> The plaintiff argues, however, that in light of the language of § 31-51q and its legislative history, it is clear that the legislature intended to provide a legal, and not equitable, remedy and, therefore, it implicitly consented to a trial by jury. In addition, the plaintiff claims that because the legislature has specifically denied the right to a trial by jury in other statutes and it failed to do so in § 31-51q, we should assume that it intended to consent to a jury trial in § 31-51q actions. While the plaintiff's arguments may be valid in a suit against a private employer, it is important to remember that the instant action is one against the sovereign.

---

[1] The state constitutional provision preserving the right to jury trial was adopted in 1818.

Id. at 380. Thus, while the Connecticut Supreme Court did not reach the issue of whether there is a right to a jury trial in a § 31-51q action against a private employer, this dictum is consistent with this court's conclusion that the remedy under § 31-51q is legal in nature.

### III. CONCLUSION

For the reasons addressed above, PAG's Motion to Strike Jury Demand (ECF No. 64) is DENIED.

It is so ordered.

Dated this 8th day of September 2020, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge